IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1862.

---

### JOHN McKELWAY *vs.* MELANCTHON L. SEYMOUR and WARREN B. SAGE.

1. Where land is conveyed to be used for a certain purpose, with a clause of forfeiture if it cease to be used for the object specified, it is no ground of forfeiture if the land is used for other purposes, provided it is also used for the purpose for which it was conveyed.

2. Where lands were conveyed for a raceway and embankment for a water power, with a proviso in the deed that so much of the premises as should not be used for the purpose specified should revert to the grantor, it was held that the grantees took a title in fee simple, subject to forfeiture by *non user*, in so much of the premises as were necessary for the purposes specified, and that the balance of the premises reverted to the grantor.

3. Where the grantor afterwards conveyed to other parties that part of the premises conveyed to the company which was not used for a raceway and embankment, and in the second conveyance bounded the premises conveyed by the line of the towpath of the first grantees, it was held that it was an admission by the grantor that the company needed, for the purposes specified in their deed, all the land to the line of land described in the second conveyance.

**321**

In ejectment, on motion for new trial.

Argued before the Chief Justice, and Justices ELMER, OGDEN, and HAINES.

*J. F. Randolph* and *P. D. Vroom*, for plaintiff.

*J. Wilson*, for defendants.

The CHIEF JUSTICE. This is a sharp action, brought by the plaintiff to recover the possession of lands conveyed by him to the Trenton Water Power Company, on the sixth day of February, 1832, in fee. The plaintiff's effort is to avail himself of the breach, by the water power company, of a condition subsequent, contained in the plaintiff's deed, which he alleges terminated the estate of the company in the whole or a part of the premises described in the deed. The deed, beyond all doubt, conveyed the fee in the lands described, which are admitted to include the premises in controversy. And as the plaintiff must recover upon his own title, he must recover because the estate of the company in the whole or a part of the premises has been defeated, either through the non-feasance or misfeasance of the water power company or its successors. The deed declares that the two tracts have been found useful and necessary for the construction of the main raceway of the company, situate in Trenton. It is not a conveyance of such part of the lands as may be useful and necessary for that purpose, but of all the two lots, with the declaration of the fact that they are useful and necessary for those purposes.

The peculiar form of the deed seems to show that the parties to it thought that all the lands were so necessary, and the grantor has so declared, and the grantees accepted the declaration as a part of their title; at any rate, by the use of this language, they have prescribed this rule of construction. The condition by virtue of which the property is claimed is as follows: provided always neverthe-

less, and it is the true intent and meaning of the parties, respectively, that the said lots and tracts of land above described are granted for and only to be used for the purpose of constructing the said main race-way, and the necessary embankments thereof, by the said company, and for no other purpose; and that no more of the said land and premises than shall actually be found necessary and requisite for the purposes shall be taken or used; and that whatever part or parcel of the same are not so found to be necessary and requisite, and as shall not be actually so used for the purposes aforesaid, shall revert back and become the property of the party of the first part, as fully and completely as if this conveyance and grant had not been made; and provided also, that if the said company shall at any time thereafter abandon or cease to use and occupy the said premises for the purposes aforesaid, then and in that case all and every the parcels of land above described and granted shall revert back to and become the property of the said party of the first part, as fully as if this grant had not been made, &c.

The plaintiff claims a part of the property—1st. On the ground that the water power company never took it for the construction of the race-way and embankments; 2d. That if they did, a part of it has been forfeited because they have suffered it to be used for other purposes besides an embankment and race-way—as a wagon-way, a place of storage for boxes, and other things—and have suffered parts of buildings to be erected on it. There are two points involved.

1st. Was any part of these lots forfeited by virtue of the condition because it was not taken for the purposes of the race-way and embankment by the water power company?

2d. Has any part of them been forfeited because used for other purposes besides a race-way and embankment?

The first presents a question of fact, and on this the weight of evidence seems to be decidedly with the de-

fendants. The plaintiff, to recover, it must be recollected, is bound to show the condition subsequent broken. He must show the facts necessary to cause the vested estate in the lands to divest and revert to the grantor.

In 1833 or 1834, the work was completed, and the company had taken the lands they needed for the work, either by condemnation or purchase. From that time until 1858, a period of twenty-four years, the plaintiff did not re-enter for breach of the condition or bring any suit to enforce the forfeiture.

If the suit had been against the water power company to recover the possession of what was not taken by the company, the lapse of time since the right of entry accrued would have been fatal to the action. If not a bar in an action between these parties, it creates a very strong presumption, almost conclusive, that all the lands described in the deed were taken by the company, and have been since held for the purpose stated in the deed.

Again, in September, 1856, the plaintiff conveyed to one Davenport a lot on the west side of the race-way, which is described as beginning on the southwesterly side of the Delaware falls race-way and at the outer line or edge of the tow-path; thence running three courses, and returning to the beginning by a curved line beginning in and running along the said outer line of the tow-path to the place of beginning.

It was admitted that this beginning point was twenty feet from the water's edge of the race-way, and that the last line in the deed runs at a distance of twenty feet from the water. This is an admission, under the hand and seal of the plaintiff, in a description of premises belonging to the defendants, who claim under Davenport, that their eastern boundary is the edge of the tow-path, as it then was, which is equivalent to an admission that the land taken for a tow-path or embankment of the race-way was twenty feet wide from the water's edge at that time, being after the work was completed.

To meet this almost conclusive evidence, the plaintiff attempts to prove by Charles Potts, who was assistant engineer when the work was constructed, that the width of the towpath was but twelve feet. He says it was so.

No act of the company, no map sanctioned by them, or map of any kind showing this fact, was produced at the trial. Nor did Mr. Potts attempt to show how the company took so much, or so little.

From the time the water power was projected up to 1852, the plaintiff permitted the company to use the bank of the race-way just as it is now used, for all the purposes of a towpath and public passage. Nor could he plead ignorance on the subject; for a considerable part of the time he was one of the directors and principal managers of the company, and fully acquainted with all their plans and operations, as well as the rights they claimed in the property, among which was a claim to a tow-path, and the right to use the race-way as a canal. In that year, 1852, he went to Dewar, Mein, and Kay, then the owners and occupants of the mill property now belonging to the defendants, and claimed a strip of land between the line of their lot and the bank of the race-way, and threatened to shut it up, unless they paid him for its use. They agreed to pay him $500 for the use of it; but no agreement was ever signed, nor was the money paid. The negotiation terminated because the firm failed.

If this were a controversy between the plaintiff and defendant, each claiming title to the land, it might be important to avoid the bar of the statute by such an admission, that the possession of the defendants was not adverse to the plaintiff. This evidence could only avail the plaintiff on the supposition that he had the documentary title to the land, and then only to rebut the defence of adverse possession by the defendants.

The admissions could give him no title as against the defendants. If he had given no other evidence of title he would not have been entitled to a verdict.

The defendants have not defended this action on the ground of adverse possession by them, but on the ground that there never was any forfeiture of the estate of the water power company.

The defendants are not bound by any estoppel growing out of the conduct of Dewar, Mein, and Kay, in attempting to buy their peace of the plaintiff, nor does that prevent them from setting up the plaintiff's entire want of title to the premises.

The plaintiff did not take possession of the disputed strip —he permitted that to remain, as it had done since 1831, open to all; he did not shut out Dewar, Mein, and Kay from the use of the tow-path as a way to their mills. They never attorned to him so as to preclude them from disputing his claim.

The evidence, passing by entirely the fact of the conflict between the witnesses, shows that Dewar, Mein, and Kay acted in entire ignorance as to the legality of the plaintiff's claim. They took the assertion of the plaintiff to be true, and negotiated as if it were so. They did not consult counsel or notify the water power company of this claim, so adverse to them.

Very little importance should be attached to such a transaction under such circumstances. It should not be viewed as a deliberate admission of the validity of the plaintiff's claim, and should not outweigh the strong presumption created by the lapse of time, and the deliberate admission in his deed to Davenport.

Without adopting the view of the court below, that the plaintiff was estopped, either by deed or by an estoppel *in pais*, from claiming any land between the line of the Davenport deed and the tow-path, I think the great weight of the evidence is against such claim as false in fact, and that the case should not be re-tried to leave that question to a jury.

The remaining point, as already stated, is whether any part of the embankment of the race-way has become for-

feited because used for purposes other than a mere embankment, either with or without the permission of the grantor in the deed. This involves the legal construction of the terms of the condition.

After securing the reversion of the land, not appropriated by the company for the race-way and embankment, to the grantor, the object of the remainder of the proviso seems to have been, to secure the devotion of the part taken professedly for the purposes of an embankment and race-way to those uses, and their continuance as such, and to provide for its reversion as soon as it ceased to be used for the purposes specified.

The plaintiff, to effect his purpose of forfeiture, has laid hold of the general words of the condition, " that the said premises are granted for, and only for the purpose of constructing the main race-way and the necessary embankments, and that no more, &c., than shall be necessary and requisite for the purpose shall be taken." This is nothing more than a declaration of the object of the grant, and a restriction of the quantity to be taken to what is necessary for that purpose only.

Although that position was not taken by the defendants' counsel, yet it is beyond all question that there is not a line or word in the proviso declaring that the use of the premises, so long as used for that purpose, for other purposes shall be a cause of forfeiture; on the contrary, the causes of forfeiture are plainly set forth in so many words. They are two—1. That whatever part is not found *necessary*, and *shall not be actually so used,* shall revert, clearly implying that, if necessary and actually so used, it shall not so revert, although used also for other purposes. 2. That on the abandonment or non-user of the premises for the purposes specified they shall revert.

So long as the land was used primarily and mainly for the purposes of a race way, and the embankment necessary to support it, any use of it for other purposes, either by the water power company or by other persons, with or

without their consent, so long as these uses were not inconsistent with its use for the main purpose, could not operate as a breach of the condition. The condition is to be construed in accordance with the manifest intention of the parties and the end they had in view. Conditions, when they tend to defeat estates, are *stricti juris,* and to be construed strictly. *Southard* v. *The Central Railroad Company,* 2 *Dutcher* 20.

It is manifest that neither of the parties to the deed ever contemplated any restriction upon the estate of the grantees, except such as would secure the devotion of it to the end both parties had in view—the construction of an efficient water power, and its continuance over the lands conveyed as a permanent work. Could the plaintiff, McKelway, have designed to prevent the use of the race-way as a canal for the floatage of logs to the mills to be established on the water power, or the use of the embankment as a tow-path for towing vessels that might pass down it? His deed to Davenport forbids that idea, for in that the embankment is described as a tow-path.

Nor does the fact that a part of the mill occupied by the defendants may have been built upon a part of the tow-path, without any conveyance of the land by the water power company, or express sanction by them, necessarily amount to a breach of the condition, so as to cause a reversion of the land to the grantor. The erection of such a building does not necessarily impair the value of that part as an embankment. So long as the embankment subserves its purposes as an integral part of the water power, the use of any part of it without the express sanction of the water power company for other purposes, cannot properly be said to be a breach of the letter or spirit of the condition. I am equally clear that the use of the tow-path as a passage to and from the mills is no breach of the condition.

The plaintiff's counsel sought to maintain himself on the argument upon the idea, that although there might

have been no forfeiture of the land by the various uses to which it had been put, besides the primary one of an embankment to retain the water in the race-way, so that the qualified fee of the water power company would be destroyed, yet that the interest of the company was but an easement in the land, leaving the fee in the plaintiff. The inference drawn from the proposition was, that he might recover the possession subject to the right of the water power company to retain the use of their race-way and embankment.

The plaintiff's deed conveyed the fee of the land to the company in terms ; it is true it was a qualified fee liable to be defeated by breach of the condition, but while it lasts it has all the qualities of a fee simple absolute.  1 *Cruise* 52, *tit.* 1, *p.* 86 ; *State* v. *Brown*, 3 *Dutcher* 20.

The powers given by its charter to this company are of the largest and most liberal kind.  It has power to acquire all the right, property, and interest belonging to the owner. *Laws of* 1831, *p.* 135, § 12.

The plaintiff, then, had no right of entry upon the lands, so long as the qualified fee of the water power company remained.  If that was ever terminated by breach of the condition, by the express terms of the deed, the whole estate of the company was gone.  There could be no partial forfeiture unless the right of the company was a mere easement.  He who enters for breach of condition regularly, shall have the land of his first estate.  *Co. Lit.* 202, *a ;* 1 *Rol.* 474, 617 ; *Com. Dig., tit.* " *Condition,*" *O* 6.

The plaintiff's case must stand or fall upon the doctrine of a total destruction of the whole estate of the water power company in the lands.  If the qualified estate is defeated, it is gone forever as soon as there is a re-entry by the grantor, or, what is equivalent, a suit to recover the possession.  *Jackson* v. *Crysler*, 1 *Johns. Ca.* 125 ; *Goodright* v. *Cain, Doug.* 477.

Where the plaintiff's title rests upon such a foundation

he should not be permitted to recover, unless upon very clear and satisfactory evidence of a forfeiture.

For these reasons I think that the first proposition of the plaintiff, that the company did not take and appropriate twenty feet for embankment, was not proved by him.

The second position, that the acts alleged are a legal forfeiture, is unsound in law.

Rule to show cause discharged.

ELMER, J.   The Trenton Delaware Falls Company were incorporated, in the year 1831, for the purpose of creating and using the water power, to be obtained by means of a wing-dam in the Delaware river, and a race-way along its banks, and were authorized by their charter to purchase, possess, and enjoy lands, mills, manufactories, erections, &c., and to construct embankments, reservoirs, and other works convenient and necessary for the uses intended, and to use themselves or to rent to others the water power thus to be created.

In the year 1832, the plaintiff conveyed to the said company two tracts of land, described by metes and bounds, and including the premises in controversy, by a deed of bargain and sale, for the consideration of six hundred dollars.   This deed contained a proviso, " that the said lots and tracts of land are granted for and to be used for the purpose of constructing the said main race-way, and the necessary embankments thereof, by the said company, and for no other purpose; and that no more of the said land and premises than shall actually be found necessary and requisite for that purpose shall be taken or used; and that whatever parcels of the same are not so found to be necessary and requisite, and as shall not be actually so used as aforesaid for the purpose, shall revert back and become the property of the said plaintiff, as fully and completely as if this conveyance and grant had not been made; and that, if the said company shall fail

to complete the said work, or shall at any time hereafter abandon or cease to use and occupy the said premises for the purposes aforesaid, then and in that case all and every the said lots and parcels of land shall revert back to and become the property of the said plaintiff."

The wing-dam and raceway were made, and the company, or one succeeding to its rights and property, continue to carry it on as contemplated. After making the raceway partly on the premises conveyed as aforesaid, the plaintiff, in the year 1836, conveyed to one Bishop Davenport, under whom the defendants hold a manufactory occupied by them, a lot of land, described as beginning on the southwest side of the Delaware falls raceway, at the outer line or edge of the towpath; thence, two courses, and then a third course parallel to the first, to the outer line of the towpath; thence, by the same, in its curved form, to the place of beginning. This deed includes a small part of the land originally conveyed by the plaintiff to the company, as to which there is no dispute. But it is claimed for the plaintiff, that there is a strip of land between the curved line along the towpath, as described in the deed to Davenport, and the water of the raceway, which is not necessary and requisite for the raceway and embankment, and therefore did not pass by his deed to the company, or if it did, which has reverted to him by virtue of the aforesaid proviso; and also, that inasmuch as proof was made that the defendants, or those under whom they claim, had erected a building extending over the aforesaid towpath line towards the raceway, and were accustomed to use the embankments or ground between the towpath line and the raceway for the passage of carts and wagons to and from the defendants' manufactory, and by placing thereon boxes, barrels, and other obstructions, that he was entitled to cover the parts so encroached upon and obstructed. A verdict having been found for the defendants, in accordance with the instructions of the judge,

it is now insisted that it ought to be set aside, and a new trial ordered.

It was insisted, for the plaintiff, upon the trial and upon the argument here, that by the true construction of his deed to Davenport, the defendants have no fee in the premises described, but only an easement to use it for the purposes of a raceway and the necessary embankment, and that if otherwise used he has a right to recover the possession, upon the principles recognized in the case of *Wright* v. *Carter*, 3 *Dutcher* 77. The deed purports to convey a title in fee for a full consideration, subject to a proviso, that the property should revert to the grantor, if found not to be necessary, or if it should not be used for the purposes intended. Such a title, the company had express power by their charter to take. In my opinion the deed conveyed not merely an easement, but a determinable fee in the land, that is to say, an estate in fee subject to be defeated upon the breach of the condition annexed, like the cases of *Southard* v. *Central Railroad Co.*, 2 *Dutcher* 13, and *Cornelius* v. *Ivins*, 2 *Dutcher* 376.

The right of the plaintiff to recover in this ejectment depended upon his ability to show, by entirely satisfactory proof, that the land described in his summons and declaration, or some part of it, is not necessary and requisite for the purpose of constructing the raceway, and the necessary embankment thereof, or is not actually used for that purpose. In this he entirely failed. The evidence, so far from showing this, in my opinion very satisfactorily shows that it is all necessary and is actually used for that purpose, and for no other inconsistent with that. The object and purpose was that the company should have such a raceway and embankment as would enable them to rent out water power to the owners of adjacent lots. After such a length of time as had elapsed from the sale to Davenport, and the erections on his lot of a large and expensive paper manufactory, before this suit was commenced, notwithstanding some intermediate ne-

gotiations, as to which the evidence was conflicting, the purchasers are entitled to every fair presumption in support of their right. Their purchase was made and their buildings erected for the express purpose of using the water power, and the plaintiff obtained a price for his land greatly enhanced by its convenient situation for that purpose. His deed bounds their lot on the line or edge of the company's tow-path, as it then existed; and no doubt can be entertained from the evidence that that line was at the foot of the company's embankment, the top of which was then used, or proposed to be used, as a tow-path to enable boats, &c., to be drawn along the race-way. This tow-path was evidently considered by the plaintiff himself, and by the other managers of the company, and by purchasers of manufacturing sites, as the embankment necessary and requisite for the purposes intended. At the widest part it did not exceed twenty feet, certainly not an unreasonable width. The plaintiff's counsel insisted that at least a part of the ground they claimed was the natural soil through which the race-way was cut, and that the company had no right to use it or the embankment for the purposes of a canal. Admitting this to be so, the plaintiff's case is not made out. The company was, in my opinion, by the true construction of their charter, and of the plaintiff's deed, entitled to hold in fee a sufficient strip of ground, consisting of the natural soil, to make a safe and convenient embankment for the confinement and use of the water on the side next to the river. Whatever may have been at one time the purpose of the company, it does not appear that the premises in dispute are now used or intended to be used as a tow-path.

Nor do I think that the evidence showing that a small part of the tow-path or embankment has been encroached upon by the defendants' buildings, and that the whole of it is used as a carriage-way to the manufactory, or for the occasional storage of goods thereon for its use, entitled the plaintiff to a verdict in his favor. There being satis-

factory proof that the whole of the premises claimed by the plaintiff constitute a reasonable and necessary embankment of the race-way, and that the same is maintained and used for the purposes intended ; the plaintiff is in no wise injured by these encroachments and obstructions, and cannot complain of them. If the company think proper to permit a building to take the place of the embankment, it is still as much an embankment as if made of earth ; and if they choose to permit their artificial embankment, or the embankment consisting of the natural soil, to be used for carting goods to the manufactories using their water, this is a use of it entirely consistent with their charter, and with the plaintiff's deed to them. I am therefore of opinion that no cause of forfeiture was shown, and that the rule to show cause must be discharged.

Justices OGDEN and HAINES concurred.